UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:11-CV-00423

BRENDA WEBB, on behalf
of herself and all others
similarly situated,                                                      Plaintiff

v.

REPUBLIC BANK & TRUST COMPANY
D/B/A/ REPUBLIC BANK,                                                    Defendant

## MEMORANDUM OPINION

This matter is before the Court upon the Amended Class Action Complaint of Plaintiff Brenda Webb, on behalf of herself and all others similarly situated (Docket No. 33). Defendant Republic Bank & Trust Company has submitted a Motion to Dismiss the Amended Complaint (Docket No. 34). Plaintiff has responded to Defendant's Motion to Dismiss (Docket No. 36), and Defendants have replied (Docket No. 39). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion to Dismiss is granted in part and denied in part.

## BACKGROUND

Plaintiff Brenda Webb brings this putative class action in an effort to hold Defendant Republic Bank liable for its policies regarding electronic debit transactions and overdraft fees.

Plaintiff opened a checking account with Defendant on November 11, 2009 (Docket No. 33-1 at 13). Defendant then issued her a debit card, allowing her to access the funds in her checking account through its use. Plaintiff executed a signature card and

agreed to be bound by all of the Account Rules that would govern her account (Docket No. 33, Exhibit A). Among the Account Rules was Plaintiff's agreement to pay overdraft fees.[1] The Account Disclosure disclosed that a $35 fee would be applied "per check or in-person, ATM, or electronic withdrawal" (Docket No. 33-1 at 2).

A letter from Defendant dated January 6, 2010 notified Plaintiff that her account would be automatically enrolled in Republic's Overdraft Honor Program (Docket No. 33-1 at 15). Defendant enclosed a copy of its Overdraft Honor Policy, which along with the Account Rules constituted the parties' agreement. The Overdraft Honor Policy explained that transactions might be authorized even if sufficient funds were unavailable and that such transitions would result in an overdraft fee.[2] It further disclosed that Defendant sorted Items on a daily basis from highest to lowest dollar amount.[3] The Overdraft Honor Policy required Plaintiff to again agree to pay any overdraft fees assessed to her account.[4]

---

[1] "Overdrafts

Pursuant to the Bank's Account Rules, you agree to pay us the amount of any overdraft and applicable fees immediately, without notice or demand from us."

Docket No. 33, Exhibit A at 1.

[2] "We may pay and permit transactions for Items, including checks, ATM withdrawals, debit card transactions, preauthorized automatic debit, telephone initiated transfers or other electronic transfers (items) when you do not have sufficient available funds, up to the Overdraft Honor Limit. An insufficient funds/overdraft fee of $35 per Item will be assessed for each Item that is submitted for which you do not have sufficient available funds in your account to cover the Item."

Docket No. 33-1 at 16.

[3] "It is our current process to process account activity each evening for Items perceived prior to the daily cut off time. We sort Items by processing by crediting all deposits first; followed by the processing of all debits in dollar amount order from high to low. Your account balance is reduced equal to the amount of each item processed. An insufficient funds/overdraft fee will be charged for each Item if the amount of the Item is greater than the account balance at the time the Item is processed."

Docket No. 33-1 at 16 (underlining in original).

[4] "If a transaction is presented for payment on your account and an overdraft occurs, pursuant to your Depositor's Account Agreement you agree to pay us the amount of any overdraft and applicable fees immediately, without notice or demand from us."

The letter advised Plaintiff that she could contact Defendant in order to opt out of the Overdraft Honor Program (Id.). Because Plaintiff did not opt out of the Overdraft Honor Program, she was automatically enrolled in it.

Plaintiff contends that her account agreement does not authorize Defendant to process her debit card transactions from the highest to the lowest dollar amount rather than chronologically. She alleges that Defendant "manipulated and reordered" her electronic transactions from the highest to lowest dollar amount in order to maximize its overdraft fee revenue (Docket No. 33 at 30). She further contends that even if the agreement does authorize this practice, Defendant nonetheless failed to adequately notify customers of its method of charging overdraft fees and that a given purchase could result in an overdraft (Id. at 33). Plaintiff brings six claims in pursuit of this theory, including Breach of Contract (Count I), Breach of the Covenant of Good Faith and Fair Dealing (Count II), Unconscionability (Count III), Conversion (Count IV), Unjust Enrichment (Count V), violation of the Electronic Funds Transfer Act (EFTA), 15 U.S.C. § 1693, *et seq.* (Count VI), and violation of the Kentucky Consumer Protection Act (KCPA) (Count VII).[5]

---

Docket No. 33-1 at 16.
[5] Plaintiff's Prayer for Relief requested a judgment:

> "1. Declaring Republic Bank's overdraft fee policies and practices to be wrongful, unfair and unconscionable;
> 2. Restitution of all overdraft fees paid to Republic Bank by Plaintiff and the Classes, as a result of the wrongs alleged herein in an amount to be determined at trial;
> 3. Disgorgement of the ill-gotten gains derived by Republic Bank from its misconduct;
> 4. Actual damages in an amount according to proof;
> 5. Punitive and exemplary damages;
> 6. Pre-judgment interest at the maximum rate permitted by applicable law;

Defendant argues that Plaintiff's claims are rendered moot by its Offer of Judgment in an amount sufficient to satisfy Plaintiff's alleged damages before a class certification motion has been filed.[6] Defendant further argues that, should Plaintiff have standing, the Court must dismiss all of her claims for failure to state a claim upon which relief may be granted. Plaintiff counters that the Court should disallow Defendant from mooting her potential class action by buying off named plaintiffs through a "distasteful litigation maneuver" (Docket No. 36 at 4) and that her Complaint adequately states a claim upon which relief can be granted.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court must accept all of the allegations in the complaint as true, and construe the complaint liberally in favor of the plaintiff."

---

> 7. Costs and disbursements assessed by Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and
> 8. Such other relief as this Court deems just and proper."

(Docket No. 33 at 47-48).

[6] Defendant's Offer of Judgment includes, in relevant part:

"1.    Pursuant to Rule 68 of the Federal Rules of Civil Procedure, Defendant Republic Bank & Trust Company d/b/a Republic Bank ("Republic" or "defendant"), hereby offers to allow judgment to be taken against it by Brenda Webb ("Webb" or "plaintiff") in the amount of $12,000.00 and to the effect stated below.

2.    Webb paid Republic a total of $2,629.50 in overdraft fees from opening her account to the present. Republic is offering judgment in the amount of $12,000.00 which includes all overdraft fees paid by Webb plus all other damages she seeks on all of her individual claims. With respect to any claim for reasonable attorneys fees and costs, Republic agrees to have the reasonable attorneys fees and costs determined by the Court if the parties are unable to reach agreement on the same.

3.    This judgment amount represents Republic's total liability for any and all of plaintiff's losses, claims, damages, interest and any other amounts or expenses that may have been recoverable, or were potentially recoverable in this action."

(Docket No. 35 at 3).

*Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

To survive a Rule 12(b)(6) motion to dismiss, the complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); see also *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). The "[f]actual allegations in the complaint must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 555 (internal citation and quotation marks omitted). A plaintiff must allege sufficient factual allegations to give the defendant fair notice concerning the nature of the claim and the grounds upon which it rests. *Id*.

Furthermore, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. A court is not bound to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 129 S. Ct. at 1949.

## DISCUSSION

### I. Defendant's Rule 68 Offer of Judgment mooted neither Plaintiff's claims nor her standing to pursue a putative class action.

Article III of the Constitution confers jurisdiction upon the federal courts only over live cases or controversies. *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). Accordingly, parties must maintain a personal stake in the litigation's outcome throughout all stages. *Id.* at 7. The loss of such a stake will render a case moot for lack of standing.

Defendant argues that its Offer of Judgment in the absence of any motion for class certification by Plaintiff effectively moots both her individual claim and those she raises on behalf of the putative class. It reasons that its offer affords Plaintiff complete relief and leaves her without a live case or controversy. However, because Defendant's Offer of Judgment failed to satisfy all of the relief that Plaintiff sought in her Amended Complaint, this argument fails.

*Hrivnak v. NCO Portfolio Mgmt., Inc. et al.*, 719 F.3d 564 (6th Cir. 2013) preserves the Court's subject matter jurisdiction over Plaintiff's putative class action. *Hrivnak* concludes that an offer of judgment moots a case only when it

> give[s] the plaintiff everything he has asked for as an individual. That means his 'entire demand' . . . . An offer limited to the relief the *defendant* believes is a appropriate does not suffice. The question is whether the defendant is willing to meet the plaintiff on his terms. . . . [M]ootness occurs only when the offer is accepted or the defendant indeed offers to provide every form of individual relief the claimant seeks in the complaint."

719 F.3d at 567-68.

Defendant argues that its Offer of Judgment has fully satisfied Plaintiff's claims except for the declaratory relief she seeks, which it suggests is "insubstantial" and improper in the absence of a claim under the Declaratory Judgment Act. But in this case, as in *Hrivnak*, Defendant's offer failed to satisfy all of Plaintiff's demands. Rather, Defendant acknowledged only the claims that it deemed legitimate. In this case, Plaintiff had a monetary claim for excessive fees paid, prejudgment interest, and punitive damages. Defendant offered $12,000 for settlement of these monetary claims. However, while this offer may be fair, it represents the value that Defendant placed on all of these claims. It did not represent the value placed on them by Plaintiff. Although Defendant's

offer may have been reasonable, it nonetheless did not fully satisfy Plaintiff's demand for relief. Accordingly, the offer does not preclude federal jurisdiction.

Defendant contends that *Genesis Healthcare Corp. v. Symczyk*, No. 11-1059, 2013 U.S. LEXIS 3157 (U.S. Apr. 16, 2013), requires this Court to dismiss Plaintiff's claims for mootness. In *Genesis Healthcare*, the Supreme Court determined that after the defendant made a Rule 68 offer of judgment that would *fully satisfy* the named plaintiff's individual claim before a class certification motion was filed, the named plaintiff had "no personal interest in representing putative, unnamed claimants, nor any other interest that would preserve her suit from mootness." *Id.* at *22-23. However, *Genesis Healthcare*, a Fair Labor Standards Act case, emphasized the "significant differences between certification under Federal Rule of Civil Procedure 23 and the joinder process under [29 U.S.C.] § 216(b)." 133 S. Ct. at 1528 n. 1. Because the *Genesis Healthcare* plaintiff failed to file a cross-petition contesting the matter, the Supreme Court was procedurally barred from addressing whether the defendant's Rule 68 offer afforded the plaintiff complete relief, thus mooting her claim. *See* 133 S. Ct. at 1528-29. As *Genesis Healthcare* did not consider this crucial question, its plaintiff occupied a dissimilar procedural posture than ours. Therefore, *Genesis Healthcare* does not dictate the result suggested by Defendant. Furhter, *Hrivnak*, discussed *supra*, relied on the *Genesis Healthcare* reasoning in reaching its decision.

Because Plaintiff's individual claims remain a live case or controversy, so too do those of the putative class. Accordingly, the Court retains jurisdiction over both and will consider the merits of Plaintiff's Complaint.

## II. Plaintiff fails to state a claim upon which relief may be granted as to fees charged on or after January 6, 2010.

### 1. Plaintiff's breach of contract claim cannot survive as to charges rendered on or after January 6, 2010.

Plaintiff's Account Agreement with Defendant expressly discloses that overdraft fees will be assessed and explains that Defendant reserves the right to modify the terms and conditions of the Account Rules at its sole discretion (Docket No. 1-2 at 3). On January 6, 2010, Defendant supplemented the terms of the Account Rules by notifying Plaintiff that her account would be automatically enrolled in the Overdraft Honor Program (Docket No. 33-1 at 15). Defendant explained that Plaintiff's account would be automatically enrolled in the Program on January 6, 2010 and enclosed a copy of the policy governing the program (Docket No. 33-1 at 15-16). Plaintiff failed to opt out of the Program.

By failing to opt out of the Program, Plaintiff submitted to its policy of posting items on a daily basis from highest to lowest dollar amount. The Overdraft Honor Policy fully explains its practice of resequencing (Docket No. 33-1 at 16). Furthermore, the Policy notified Plaintiff that her debit card transactions would not necessarily be posted in their chronological order (Docket No. 33-1 at 16). By choosing not to opt out of the Program, Plaintiff expressly agreed that Defendant could process her transactions in its chosen sequence.

A breach of contact action "may not be based on an act which the contract authorizes to be done." *Ford Motor Co. v. Alexander Motor Co.*, 2 S.W.2d 1031, 1033 (Ky. 1928); *see PNC Bank NA v. Martin*, 2011 U.S. Dist. LEXIS 130752 (W.D. Ky.

2010) (finding no breach of contract where the account agreement authorized the bank to charge back its customer's account). As of January 6, 2010, the terms governing the parties' relationship authorized Defendant to charge overdraft fees to Plaintiff's account based on high-to-low sequencing. Therefore, Plaintiff's breach of contract claim is therefore without merit, as to fees charged January 6, 2010 and after.

2.  **Plaintiff's claim for breach of the covenant of good faith and fair dealing fails as to charges rendered on or after January 6, 2010.**

Plaintiff's claim for breach of the covenant of good faith and fair dealing must also be dismissed for the reasons discussed above. The parties' agreement authorized Defendant's conduct. The covenant of good faith and fair dealing implied in each contract "does not preclude a party from enforcing the terms of its contract." *Ranier v. Mount Sterling Nat. Bank*, 812 S.W.2d 154, 156 (Ky. 1991). A party does not breach the covenant of good faith and fair dealing when it "act[s] according to the express terms of a contract for which it bargained." *Farmers Bank and Trust Co. of Georgetown, Ky. V. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005).

The terms of the Account Rules and Overdraft Honor Policy governed the parties' relationship and allowed Defendant to engage in the practices at issue as of January 6, 2010. The Overdraft Honor Policy was not silent as to the parties' rights; rather, it unambiguously explains Defendant's application of resequencing and high-to-low posting. Accordingly, Plaintiff's claim for breach of the covenant of good faith and fair dealing must be dismissed as to claims arising on or after January 6, 2010.

3.  **Plaintiff's claim for unconscionability fails.**

Kentucky does not recognize an affirmative claim for unconscionability. Rather, unconscionability is a defense to enforcement of a contract. *See, e.g., Louisville Bear Safety Service v. South Central Bell Telephone Co.*, 571 S.W.2d 438 (Ky. App. 1978); *Wickliffe Farms, Inc. v. Owensboro Grain Co.*, 684 S.W.2d 17 (Ky. App. 1984); *see also* Restatement (2d) of Contracts § 208 (1981). Accordingly, this claim provides no basis for recovering damages under Kentucky law, and the Court need not consider the arguments that assume the validity of such a basis.

**4. Plaintiff's claim for conversion fails.**

To establish a prima facie case of conversion, a plaintiff must plead and prove, among other factors, that she "had legal title to the converted property . . . ." *Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W.3d 626, 632 n. 12 (Ky. 2005)). That is, the Plaintiff must demonstrate that the property that she alleges was wrongfully converted actually belonged to her.

Once a depositor places funds into a bank account, title to the deposited funds passes to the bank. *Scoggan v. Dillon*, 252 S.W.2d 35, 37 (Ky. 1952) ("The deposit of money in a bank passes title and it becomes part of the assets of the bank . . . ."). Although Plaintiff retained the right to demand possession of the amount of money that she deposited, Kentucky law specifies that once funds are deposited into a bank account, the depositor no longer retains control over those specific funds. *Id.* Therefore, because Plaintiff's funds could not be the subject of conversion, and this claim accordingly fails.

**5. Plaintiff's claim for unjust enrichment fails as to charges rendered on or after January 6, 2010.**

Plaintiff's unjust enrichment claim fails on a similar basis. Defendant expressly disclosed its practice of charging overdraft fees and its method for calculating these charges in the Overdraft Honor Policy, applicable to Plaintiff's account on January 6, 2010 (Docket No. 33-1 at 15-16). "[T]he doctrine of unjust enrichment has no application in a situation where there has been an explicit contract which has been performed." *Res-Care, Inc. v. Omega Healthcare Investors, Inc.*, 187 F. Supp. 2d. 714 (W.D. Ky. 2001). Any benefit that Defendant received from the fees it assessed to Plaintiff was not beyond its contractual rights, as the contract explicitly permitted high-to-low posting and the imposition of overdraft charges. Because such enrichment was permissible under the terms of the parties' agreements as of the date that Plaintiff's account was enrolled in the Overdraft Honor Program, it was not unjust.

**6. Plaintiff's claim for violation of the Electronic Funds Transfer Act (EFTA) fails.**

Plaintiff has not pled the required elements of a violation of the EFTA. The EFTA requires operators of ATMs (i.e., one who operates an ATM and "is not the financial intuition that holds the account" of the consumer using the ATM) to notify consumers of fees charged to them. 15 U.S.C. § 1693b(d). EFTA's Regulation E requires an ATM operator imposing a fee on a consumer who initiates an electronic fund transfer or balance inquiry to provide notice that a fee will be imposed and to disclose its amount. 12 C.F.R. § 205.16. Electronic terminal receipts must be both understandable and accurate regarding the total amount of the transfer, including any fees associated with it. 12 C.F.R. § 205.9. "Electronic terminals" include ATMs, cash dispensing means, and point-of-sale terminals.

Plaintiff fails to allege that she initiated a transaction governed by the EFTA and failed to receive the notice it requires. Her recital of the statutory language does not satisfy the pleadings standards of an EFTA claim. Therefore, it must be dismissed. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (holding that "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "naked assertion[s]" lacking "further factual enhancement" will not satisfy the requirements for initial pleadings) (citing *Bell Atlantic v. Twombly*, 127 S. CT. 1955 (2007)). *See also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) ("holding that although a complaint need not contain detailed factual allegations, its allegations must be sufficient to raise a right to relief above the speculative level).

**7. Plaintiff's claim for violation of the Kentucky Consumer Protection Act (KCPA) fails as to charges rendered on or after January 6, 2010.**

The KCPA provides that "unfair, false, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." KRS 367.170. Plaintiff essentially alleges that Defendant engaged in such acts or practices by posting items from high to low dollar amounts. However, this allegation is contradicted by the agreement that she executed, which explicitly authorizes Defendant's practice of posting items from high to low and charging an overdraft fee for honoring transactions when an account lacks sufficient funds. Moreover, Plaintiff could have elected to withdraw from the Overdraft Honor Program but chose not to do so.

A defendant cannot be found to have violated the KCPA unless he deceived or misled the plaintiffs. *See Wahba v. Don Corlett Motors, Inc.*, 573 S.W.2d 357, 360 (Ky. App. 1978). Because Defendant's practices were explicitly disclosed in the Overdraft

Honor Policy, its conduct after notifying Plaintiff of the Policy was not deceptive or misleading and did not violate the KCPA. KCPA claims originating on or after January 6, 2010, therefore lack merit and must be dismissed.

**III. Plaintiff's claims for Breach of Contract, Breach of the Covenant of Good Faith and Fair Dealing, Unjust Enrichment, and violation of the Kentucky Consumer Protection Act (KCPA) survive as to fees charged prior to January 6, 2010.**

As noted above, Plaintiff's claims for unconscionability, conversion, and violation of the Electronic Funds Transfer Act fail as a matter of law. However, the remaining claims require consideration of both the Overdraft Honor Policy (Docket No. 33-1 at 15-16) and the Account Rules (Docket No. 1-2).

Plaintiff agreed to the Account Rules on November 11, 2009. The Account Rules authorize Defendant to charge overdraft fees to Plaintiff's account and to modify the agreement's terms and conditions at its sole discretion. The Account Rules are silent, however, as to the method by which charges resulting in overdrafts will be posted. No provision in the Account Rules authorized Defendant to sequence the payment of debit card transactions in the high-to-low order selected by Defendant. Defendant did not notify Plaintiff of its practice of resequencing such charges from highest to lowest until it sent her the Overdraft Honor Policy, dated January 6, 2010. Prior to this date, Plaintiff was not informed of this practice and could not agree to it.

Furthermore, Defendant's letter informs Plaintiff that it would enroll Plaintiff's account in the Overdraft Protection Program as of January 6, 2010. Although the Account Rules permit Defendant to modify its terms and conditions, it does not appear to allow Defendant to apply such modifications retroactively, applying additional overdraft fees *prior* to the date that it informed Plaintiff of the policy and its effective date. Prior to

that date, it does not appear there was an agreement as to the sequencing of overdraft fees.

For these reasons, Plaintiff's claims for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and violation of the Kentucky Consumer Protection Act (KCPA) arising from transactions prior to January 6, 2010 survive Defendant's Motion to Dismiss.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is granted in part and denied in part. An appropriate order shall issue.